UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON P. GULINO, | : | PRISONER CASE NO. |
| Plaintiff, | : | 3:12-cv-156(JCH) |
| | : | |
| v. | : | |
| | : | |
| BETH CROSSDALE, et al., | : | AUGUST 22, 2012 |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

**I.    INTRODUCTION**

The plaintiff, currently incarcerated at MacDougall Correctional Institution in Suffield, Connecticut ("MacDougall"), has filed a complaint pro se under section 1983, of title 42 of the United States Code. The plaintiff sues Counselor Supervisor Beth Crossdale; Wardens Charles Lee, Anthony Coletti, and Peter Murphy; Correctional Officer Evans; Lieutenant Jackson; Dentists Victor Shivey, John Dupont, and Joann Tuttle; Physicians Ruiz and Syed Naqvi; Nurse Kevin McCrystal; and Health Services Administrator Requel Lightner.

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id. This requirement applies both where the inmate has paid the filing fee and where he is proceeding in forma pauperis. See Carr v. Dvorin, 171 F.3d 115 (2d Cir. 1999) (per curiam). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).    Although detailed allegations are not required, "a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a pro se complaint, see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

The plaintiff alleges that in October 2004, at Cheshire Correctional Institution ("Cheshire"), he refused to engage in a sexual relationship with Counselor Supervisor Beth Crossdale. In January 2005, Supervisor Crossdale denied a request that the plaintiff be considered for an inmate janitor position. In April 2005, prison officials transferred the plaintiff to MacDougall for treatment of his hernia. In May 2006, the Security Division at MacDougall removed the plaintiff from general population based on evidence that the plaintiff had been involved in a sexual relationship with a female correctional officer at MacDougall.

On May 10, 2006, prison officials at MacDougall transferred the plaintiff to Cheshire. In November 2007, Supervisor Crossdale denied the plaintiff's request to be considered for a vocation class and made it known that she would not permit the plaintiff to engage in any prison programming.

2

The plaintiff complained to correctional staff and filed a grievance with Warden Lee in February 2008, about Supervisor Crossdale's attempts to sexually harass him and her retaliatory conduct after he refused to engage in a relationship with her. Warden Lee denied the grievance and failed to investigate the alleged actions of Supervisor Crossdale.

On February 25, 2009, Supervisor Crossdale increased the plaintiff's risk level from one to four, even though the plaintiff had not been found guilty of a Class A disciplinary infraction. The plaintiff alleges this action was taken in retaliation for his complaints to correctional staff and a grievance filed with Warden Lee.

The plaintiff claims that, during his incarceration at Corrigan Correctional Institution ("Corrigan") from June 10, 2009 to April 10, 2010, Warden Coletti discontinued all recreational activities and he was unable to get sufficient exercise. In addition, Warden Coletti decreased the food portion sizes for each inmate causing the plaintiff to lose twenty-six pounds during the period from September 2009 until June 2010.

During the plaintiff's confinement at Cheshire from May 2001 to May 2009, he experienced pain in his face that radiated through his jaw and up to his temple. Drs. Shivey, Dupont, and Ruiz examined the plaintiff, but failed to diagnose his condition properly and offered no effective treatment for his pain.

At Corrigan in September 2009, Dr. Joann Tuttle examined the plaintiff and noted that wisdom tooth number one was impacted and was pressing on tooth number two. Dr. Tuttle offered the plaintiff medication for pain and an antibiotic to treat any possible infection. Dr. Tuttle offered no further treatment for the plaintiff's pain.

At MacDougall from October to December 2011, Dr. Naqvi failed to properly treat the plaintiff's symptoms of headaches, dizziness, weakness and fatigue as well as an

infected rodent bite on his leg. In December 2011, Nurse McCrystal discontinued a medication prescribed for plaintiff's skin condition in retaliation for the plaintiff's complaints about the medical treatment he had received from Dr. Naqvi.

The plaintiff alleges that on August 18, 2010, he received a disciplinary report and was escorted to the restrictive housing unit by Lieutenant Jackson and Correctional Officer Evans. At the time, he was wearing a religious object around his neck. Lieutenant Jackson allegedly ordered Correctional Officer Evans to remove the religious article. Officer Jackson removed the article and placed it in his pocket. In December 2010, the plaintiff filed a lost property claim seeking $200.00 for the religious article allegedly confiscated and lost by Officer Evans. In July 2011, the plaintiff filed a grievance complaining that he had never received confirmation that the lost property claim had been received by the property claims board. Warden Peter Murphy responded to the grievance, indicating that the property claims board was not required to send a confirmation to an inmate indicating his or her claim had been received.

## II. DISCUSSION

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. See U.S. Const. amend. I; Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). The plaintiff has not alleged the confiscation and loss of the religious article that he wore around his neck interfered in any way with the exercise or practice of his religion. Thus, the plaintiff has failed to state a claim for a violation of his First Amendment rights. The

4

First Amendment claim is dismissed.  See 28 U.S.C. § 1915A(b)(1).

As a prisoner, plaintiff has no expectation of privacy in his cell.  Thus, the Fourth Amendment proscription against unreasonable searches and seizures does not apply.  See Hudson v. Palmer, 468 U.S. 517, 525-28 & n.8 (1984).  The plaintiff's unreasonable seizure claim against defendants Jackson and Evans is dismissed.  See 28 U.S.C. § 1915A(b)(1).

The plaintiff also claims that defendants Evans and Jackson confiscated his religious item and failed to return it to him in violation of the Fourteenth Amendment.  The Supreme Court has found that the Due Process Clause of the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy.  See Hudson, 468 U.S. at 533; Parratt v. Taylor, 451 U.S. 527, 543 (1981).

The State of Connecticut provides adequate remedies for the kind of deprivation the plaintiff alleges.  See State of Connecticut Department of Correction Administrative Directive 9.6(16) (Oct. 1, 2011) (providing Department of Correction's Lost Property Board shall hear and determine any claim by an inmate who seeks compensation not to exceed $3,500.00 for lost or damaged personal property and that inmate may present the property claim to the Claims Commissioner after the Board denies the claim in whole or in part); (Conn. Gen. Stat. § 4-141 et seq. (providing that claims for payment or refund of money by the state may be presented to the Connecticut Claims Commission); see also, e.g., S. v. Webb, 602 F. Supp. 2d 374, 386 (D. Conn. 2009) (finding Connecticut has sufficient post-deprivation remedies for seizures of property by state officials).  These state remedies are

not rendered inadequate simply because plaintiff anticipates a more favorable remedy under the federal system or that it may take a longer time under the state system before his case is resolved.  See Hudson, 468 U.S. at 535.

Thus, any federal claim that defendants Jackson and Evans lost or destroyed personal property confiscated from the plaintiff on August 28, 2010, is not cognizable in this action.  The property claims against defendants Evans and Jackson are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff claims that Warden Murphy inappropriately responded to his grievance concerning his submission of a claim for the loss of his religious article to the Department of Correction's Property Board.  On December 2, 2010, the plaintiff filed a property claim regarding the loss of his religious article with the Department of Correction's Property Board pursuant to State of Connecticut Department of Correction Administrative Directive 9.6(16)B.  In July 2011, the plaintiff attempted to contact a member of the Department of Correction's Property Board to complain that he had not received any acknowledgment that his property claim had been received by the board.  When he received no response to his attempts to contact the Property Board, he filed an grievance.  On August 3, 2011, in response to the grievance, Warden Murphy informed the plaintiff that the Department of Correction's Property Board was not obligated to issue a notice confirming its receipt of a property claim.  State of Connecticut Department of Correction Administrative Directive 9.6 does not include a requirement that the Lost Property Board provide a receipt or confirmation notice when a claim is filed.  See Administrative Directive 9.6, Section 16, http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf.  Thus, Warden Murphy did not err when he explained this fact in his response to the plaintiff's grievance.

At the time of Warden Murphy's response, the Property Board still had approximately four months within which to respond to the plaintiff's property claim. See id. at 9.6(16)E (Lost Property Board is permitted up to one year from the date of receipt of an inmate's lost property claim to render a decision). Furthermore, the plaintiff could have filed a property claim with the State Claims Commissioner pursuant to Conn. Gen. Stat. § 4-147. Thus, Warden Murphy's response to the plaintiff's grievance is not evidence that the State of Connecticut's property claims procedures were inadequate. The property claim against Warden Murphy is dismissed for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b)(1).

The plaintiff asserts that on November 4, 2011, he wrote an informal request to Health Services Administrator Requel Lightner asking her to follow-up with Dr. Naqvi about the results of blood tests performed in October 2011. A nurse intercepted this request and responded to it herself. The plaintiff does not allege that Administrator Lightner ever received his request.

On November 18, 2011, the plaintiff attempted to speak to Administrator Lightner as she was leaving the medical unit. She responded that she was going home and did not have time to listen to his complaints about rodent bites. The plaintiff does not assert that he made any further attempts to contact Administrator Lightner.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary

pain by prison personnel. See Id. at 104-06. "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation," id.; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

The fact that a prisoner sent a letter to a supervisory official does not establish the requisite personal involvement of the supervisory official. See Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("Numerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.") (quoting Candelaria v. Higley, No. 04-CV-277, 2008 WL 478408, at *2 (W.D.N.Y. Feb. 19, 2008) (citing cases).  Thus, the plaintiff's allegation that he sent a letter to Administrator Lightner in early November 2011, but a nurse intercepted the letter and responded to it herself, does not state a claim of involvement in the treatment of or deliberate indifference to the plaintiff's medical needs.

Even if the court assumes that the infection from the rodent bite was a serious medical condition, the court concludes that the plaintiff has not alleged that Administrator Lightner was deliberately indifferent to this medical need.  The plaintiff mentioned his infection from the rodent bite to Administrator Lightner as she was leaving the medical unit.  She stated she did not have time to consider the plaintiff's rodent bite because she was finished with her shift for the day.  The conduct by Administrator Lightner constitutes, as most, negligence.  Mere negligence, however, will not support a section 1983 claim. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) ("Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law").  The

claims against Administrator Lightner are dismissed for failure to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b)(1).

The court concludes that the remaining allegations in the complaint state plausible claims of retaliation and deliberate indifference to medical and dental needs.  Those claims shall proceed against defendants Crossdale, Lee, Coletti, Shivey, Dupont, Ruiz, Tuttle, Naqvi, Murphy, and McCrystal in their individual capacities.  The claims against these defendants in their official capacities are dismissed as barred by the Eleventh Amendment.  See 28 U.S.C. § 1915A(b)(2); Kentucky v. Graham, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); Quern v. Jordan, 440 U.S. 332, 342 (1979) (section 1983 does not override a state's Eleventh Amendment immunity).

## ORDERS

The court enters the following orders:

(1) All claims against defendants Lightner, Evans, and Jackson and the property claim against defendant Murphy are **DISMISSED** for failure to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b)(1).  The claims for money damages against defendants Crossdale, Lee, Coletti, Shivey, Dupont, Ruiz, Tuttle, Naqvi, Murphy, and McCrystal in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The remaining retaliation and deliberate indifference to medical and dental needs claims shall proceed against defendants Crossdale, Lee, Coletti, Shivey, Dupont, Ruiz, Tuttle, Naqvi, Murphy and McCrystal in their individual capacities.

(2) Within fourteen (14) days of this Order, the Pro Se Prisoner Litigation Office

shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for defendants Crossdale, Lee, Coletti, Shivey, Dupont, Ruiz, Tuttle, Naqvi, Murphy and McCrystal and mail waiver of service of process request packets to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Pro Se Office shall report to the court on the status of all waiver requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     The Pro Se Prisoner Litigation Office shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(4)     The Pro Se Prisoner Litigation Office shall send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(5)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within seventy (70) days from the date of this Order. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this Order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within eight months (240

days) from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a non-moving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of August, 2012.

                                                                                  __/s/ Janet C. Hall_____
                                                                                  Janet C. Hall
                                                                                  United States District Judge